**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SANDRA WILLIAMS, | Case No. 15-cv-04494-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| PAUL LORENZ, et al., | |
| Defendants. | |
| | [Re: ECF 83] |

Before the Court is Defendants County of Santa Clara, Paul Lorenz, Trudy Johnson, and George Fogle's motion for summary judgment, or in the alternative, summary adjudication ("motion for summary judgment"). Mot., ECF 83. Plaintiff opposes the motion. Opp'n, ECF 106. The Court heard oral argument on August 2, 2018. For the reasons discussed below, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

From the parties' briefing, and evidence, the following facts relevant to the pending motion for summary judgment are undisputed unless otherwise noted.

### A.   Procedural History

Plaintiff Sandra Williams, an African American woman over the age of 40, was a Manager of Care Management at the Santa Clara Valley Medical Center from April 2013 until she resigned in October 2016. Mot. 1–2; Ex. A to Bussey Decl. ("Williams Dep.") 9:18–22, 289:17–20, ECF 88-1.

Alleging wrongful conduct including discrimination based on sex, age, and race, Plaintiff initially filed this lawsuit in the Santa Clara County Superior Court on August 7, 2015 naming

Santa Clara Valley Medical Center, County of Santa Clara, Paul Lorenz, Trudy Johnson, and George Fogle as defendants.  Orig. Compl., ECF 1-1.  On September 28, 2015, Defendants County of Santa Clara, Paul Lorenz, Trudy Johnson, and George Fogle ("Defendants") filed an answer.  The County indicated that "Santa Clara Valley Medical Center" ("VMC") is not an independent "public entity" under California law and is therefore not a proper defendant.  Answer 1 n.1, ECF 1-1.  Paul Lorenz is the Chief Executive Officer of VMC.  Mot. 6.  Trudy Johnson was VMC's Chief Nursing Officer from May 2008 to May 2016.  Johnson Decl. ¶ 2, ECF 85.  George Fogle was the Director of Medical Social Services at VMC from May 2010 to November 2011 and again from February 2012 to the fall of 2014.  Fogle Am. Decl. ¶ 3, ECF 113.  On September 30, 2015, Defendants removed the action to federal court.  Notice of Removal, ECF 1.

On March 5, 2018, Plaintiff filed a supplemental complaint against a new defendant Lisa Stroud who worked at VMC as Director of Care Management beginning in January of 2015 (Williams Dep. 287:8–10).  Suppl. Compl., ECF 62.  The supplemental complaint attaches the August 7, 2015 complaint.  *See id.*  However, Plaintiff did not file a motion for leave to submit the supplemental complaint.  Moreover, Plaintiff did not submit a proof of service showing that Stroud was served with a summons and the complaints in this case as required by Federal Rules of Civil Procedure 4(c).

In her original complaint, Plaintiff alleges the following eight claims:

(1) sex discrimination in violation of California Government Code § 12940 et seq. and Title VII (against all Defendants);

(2) violation of California Family Rights Act, Government Code § 12945.2 et seq. (against County of Santa Clara);[1]

(3) race discrimination in violation of California Government Code § 12900 et seq. and Title VII (against all Defendants);

(4) age discrimination in violation of California Government Code § 12900 et seq. and the Age Discrimination in Employment Act (against all Defendants);

---

[1] This claim is asserted against "Defendant Employer and Does 1–20."  Orig. Compl. 13.

(5) harassment in violation of California Government Code § 12900 et seq. (against all
Defendants);

(6) failure to prevent, investigate and remedy discrimination in violation of California
Government Code § 12900 et seq. (against County of Santa Clara);[2]

(7) hostile work environment in violation of California Government Code § 12900 et seq.
and Title VII (against County of Santa Clara);[3]

(8) retaliation in violation of California Government Code § 12940 et seq. and EEOC
(against County of Santa Clara);[4]

*See* Orig. Compl. ¶¶ 18–144.

On June 28, 2018, Defendants filed their motion for summary judgment with respect to all claims.

### B.   Factual Background

#### i.   Plaintiff Begins Employment at VMC

In April 2013, Plaintiff applied for a Manager of Care Management position at VMC. Williams Dep. 9:18–22. Dionette Kelton, then Director of Care Management, offered Plaintiff the position. *Id.* at 12:5–13:6. A few days later, a Human Resources employee informed Plaintiff that her starting salary would be $10,867 per month. *Id.* at 14:1–17, 28:2–8. Plaintiff asked for a higher salary, but Kelton replied that Plaintiff's request would require the approval of the Board of Supervisors and that such a request would delay Plaintiff's start date. *Id.* at 14:20–16:3; Williams Decl. ¶ 3.[5] Plaintiff accepted the position and started her employment with VMC in April 2013. Williams Dep. 16:4–6; Williams Decl. ¶ 3.

#### ii.   Plaintiff's Employment at VMC While George Fogle Acted as Interim Director of Care Management

In September 2013, Kelton unexpectedly passed away. Williams Dep. 32:21–34:13.

---

[2] This claim is asserted against "Defendant Employer and Does 1–20." Orig. Compl. 22.
[3] This claim is asserted against "Defendant Employer and Does 1–20." Orig. Compl. 24.
[4] While the complaint references the EEOC, it does not identify a specific federal statute. *See* Orig. Compl. ¶¶ 129–44. The Court construes this claim to rely on Title VII and ADEA. This claim is asserted against "Defendant Employer and Does 1–20." *Id.* at 26.
[5] All exhibits to the Williams Decl. are filed at ECF 106.

3

Johnson, then VMC's Chief Nursing Officer, appointed Fogle to the Director of Care Management on an interim basis. *See* Johnson Decl. ¶¶ 5–8. The parties dispute whether the appointment was formal. In any case, Fogle did not receive an increase in salary and benefits or an official title change. *Id.* ¶ 8; Fogle Am. Decl. ¶ 6. Fogle submitted a resignation letter in August 2014. Fogle Am. Decl. ¶¶ 3, 11.

While Fogle acted as the interim director, several employees managed by Plaintiff approached Fogle with complaints about her management style. Fogle Am. Decl. ¶ 8. Conflicts also arose between Plaintiff and Fogle. For example, one incident occurred in December 2013. Fogle asked Plaintiff to have her staff call other hospitals to assist with an emergency transfer of a patient to another facility. Williams Dep. 154:5–155:6, 158:7–160:10; Ex. H to Bussey Decl., ECF 88-8. Plaintiff responded to Fogle stating that the staff might complain to their union. Williams Dep. 158:7–159:14. Fogle later told Plaintiff that he considered her response to be "counterproductive." *Id.* at 158:5–14, 170:16–20.

On June 26, 2014, Plaintiff received her first performance evaluation. Ex. J to Bussey Decl., ECF 88-10. The evaluation stated that Plaintiff "demonstrated technical competence" and "communicate[d] effectively in writing and present[ed] educational material to both nurses and physicians." *Id.* at 997.[6] The evaluation also noted that it was "important [for Plaintiff to] ensure that her staff [were] provided the opportunity to address concerns as there have been issues with staff questioning fairness, equity and balance in the work environment." *Id.* Plaintiff signed the evaluation. *Id.* at 998.

A few days later, Plaintiff went on a vacation to visit her mother. Williams Dep. 106:16–23. She was expected to return on July 9, 2014. *Id.* at 106:16–20. On July 8, 2014, Plaintiff emailed several individuals stating that she intended to take leave under the Family Medical Leave Act ("FMLA") starting the next day, but Fogle did not receive that email. *Id.* at 110:4–24; Ex. K to Bussey Decl. (email communication), ECF 88-11. Plaintiff stated that she needed time off to care for her mother who had previously undergone surgery. Williams Dep. 106:9–15. On July 9,

---

[6] The cited page number for Ex. J to the Bussey Declaration refers to the Bates number at the bottom of each page.

2014, Fogle sent a voice message and an email to Plaintiff to inquire whether Plaintiff intended to take time off as a vacation or through FMLA. Ex. M to Bussey Decl. (email), ECF 88-13. Johnson also emailed Plaintiff and offered to send the necessary FMLA paperwork. Ex. O to Bussey Decl. (email), ECF 88-15. Johnson sent follow-up emails about Plaintiff's need to submit the FMLA paperwork. Ex. P to Bussey Decl. (email), ECF 88-16. While Plaintiff received emails from Johnson, Plaintiff had been working with employees in Human Resources to secure her FMLA leave. Williams Dep. 112:18–23, 116:8–11. Plaintiff received FMLA leave for the period between July 9, 2014 and August 4, 2014. *Id.* at 127:23–128:7.

On August 21, 2014, about three weeks after Plaintiff returned from FMLA leave, Johnson conducted a "verbal counseling" session with Plaintiff about several topics including the need for (i) timely communication regarding resignations and reassignments of staff and (ii) better coordination for patient transfer. Ex. U to Bussey Decl., ECF 88-21.

### iii. Plaintiff Files Complaints with the Department of Fair Employment and Housing and Equal Employment Opportunity Commission

In September 2014, Plaintiff and her union representative met with Paul Lorenz, the Chief Executive Officer of VMC. Williams Decl. ¶ 24. Plaintiff expressed that she received discriminatory and harassing treatment from Johnson and Fogle. *Id.* Plaintiff asked Lorenz to change the reporting structure so that she would not need to report to Johnson. *Id.*; Williams Dep. 302:23–304:2. The matter was referred to the hospital's Equal Opportunity Officer. *See* Ex. NN to Bussey Decl., ECF 88-40.

Thereafter, on October 2, 2014, Plaintiff filed an administrative charge with the Department of Fair Employment and Housing ("DFEH"). Ex. V to Bussey Decl. ("DFEH Charge"), ECF 88-22. The charge alleged that the Defendants discriminated, harassed, and retaliated against Plaintiff. *Id.* at 565.[7] For example, Plaintiff alleged that she was given more work than others, denied adequate staffing, treated in a demeaning and disrespectful manner. *Id.* She also alleged that management continued to disparage, monitor, and unfairly criticize her, and that she was wrongfully denied family and medical leave. *Id.* Later, on December 4, 2014,

---

[7] The cited page for the DFEH Charge refers to the Bates number at the bottom of each page.

1  Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") which

2  incorporated the DFEH charge.  Ex. W to Bussey Decl. ("EECO Charge"), ECF 88-23.

3  ### iv.    Lisa Stroud is Hired as the Director of Care Management

4  In November 2013, Plaintiff applied for the permanent position as Director of Care

5  Management.  Ex. 13 to Williams Decl.  No interview occurred.  On June 19, 2014, Plaintiff

6  applied for the permanent position a second time.  Ex. 14 to Williams Decl.  A few weeks earlier,

7  on June 5, 2014, Jameszetta James, who self-identifies as "black," applied for the Director of Care

8  Management position.  Exs. 16 and 17 to Williams Decl.  On August 9, 2014, Lisa Stroud, a

9  Caucasian woman, applied for the position.  Ex. 17 to Williams Decl.

10  VMC conducted interviews for the vacant director position on October 14, 2014.  A panel

11  interviewed and reviewed the applications of three candidates—Plaintiff, James, and Stroud.  A

12  scoring list submitted by Defendants shows that a majority of the panel members voted for Stroud

13  as their first choice.  *See* Ex. X to Bussey Decl., ECF 88-24.  The scoring list also attaches

14  "Confidential Information Forms" that include the panel members' evaluations of the three

15  candidates.  *Id.*  After the interview process, Johnson offered the director position to Stroud.

16  Johnson Decl. ¶ 14.

17  ### v.    Plaintiff Works under Lisa Stroud's Supervision

18  Stroud began working as Director of Care Management in January 2015.  Williams Dep.

19  287:8–10.  Plaintiff testifies that her work environment became "temporarily better" once she

20  started reporting to Stroud.  *Id.* at 287:25–288:14.  But Plaintiff claims that her situation

21  deteriorated after a few months.  *Id.*  According to Plaintiff, Stroud (i) omitted Plaintiff's name

22  from out-of-office emails, (ii) excluded Plaintiff from meetings, and (iii) designated Marah Gebala

23  to be in charge during Stroud's absence.  Williams Dep. 288:18–23, 294:16–22, 309:8–11;

24  Williams Decl. ¶¶ 10–11.  Gebala is another member of the Care Management Department who

25  was promoted to Manager in September 2013.  Ex. I to Bussey Decl. ("Gebala Dep.") 69:25–70:1,

26  ECF 88-9; Moresco Decl. ¶ 5, ECF 86.

27  On July 2, 2015, Plaintiff received her second evaluation.  Ex. Y to Bussey Decl.  The

28  evaluation states that "[Plaintiff] has positive interactions with her staff during staff meetings" but

"[s]everal concerns have come from . . . staff, . . . [regarding Plaintiff's] interactions with them."
*Id.* at 339.[8]  The evaluation recommended that Plaintiff take classes on communication and conflict management provided by the County.  *Id.*  Plaintiff objected to the evaluation in writing.
*Id.* at 341–42.

### vi.    Plaintiff's Resignation

On August 7, 2015, Plaintiff filed this action in state court.  At some point, Plaintiff told her colleagues that she thought the County bugged her office and phone and tracked her movements.  Williams Dep. 241:18–243:1.  Several employees reported similar statements made by Plaintiff.  Ex. Z to Bussey Decl., ECF 88-26.  On January 15, 2016, VMC placed Plaintiff on paid administrative leave and required her to submit to a fitness for duty examination.  Ex. AA to Bussey Decl., ECF 88-27.  On January 18, 2016, Plaintiff submitted a "Certification of Health Care Provider for Employee's Serious Health Condition" which documented her need for medical leave from January 18 to February 15, 2016.  Ex. 51 to Williams Decl.  While Plaintiff was on leave, Stroud sent letters inquiring whether Plaintiff intended to continue her employment with VMC.  *See, e.g.*, Ex. BB to Bussey Decl., ECF 88-28; Ex. 50 to Williams Decl.  Plaintiff submitted a resignation letter in October 2016.  Ex. CC to Bussey Decl., ECF 88-29.  By that time, Johnson had resigned from VMC in May 2016.  Johnson Decl. ¶ 16.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried."  *State Farm Fire & Cas. Co. v. Geary,* 699 F. Supp. 756, 759 (N.D. Cal. 1987).

The moving party "bears the burden of showing there is no material factual dispute," *Hill*

---

[8] The cited page for Ex. Y to the Bussey Declaration refers to the number at the bottom of each page.

*v. R+L Carriers, Inc.,* 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.,* 891 F. Supp. 510, 513–14 (N.D. Cal. 1995). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett,* 567 F.3d 554, 562 (9th Cir. 2009).

## III. PLAINTIFF'S EVIDENTIARY OBJECTIONS

Plaintiff objects to paragraphs 9, 10, 12, 14, and 15 in the Johnson Declaration and paragraph 8 in the Fogle Declaration pursuant to Federal Rules of Evidence 401, 402, 403, 602, 701, 702, and 801 on the grounds that those statements are "speculative, irrelevant, hearsay, argumentative," and "mischaracterize the evidence, lack foundation, . . . and are not within the witness'[] personal knowledge, and constitute improper opinion." Opp'n 1–2.

Plaintiff provides a laundry list of objections without articulating the specific basis with respect to each objected paragraph in the Johnson Declaration and Fogle Declaration. The Court has reviewed each objected paragraph in light of all objections and finds that those paragraphs are all relevant and admissible. For example, the Court notes that some paragraphs concern third-parties' complaints on how they were treated by Plaintiff. *See, e.g.*, Johnson Decl. ¶ 15, Fogle Am. Decl. ¶ 8. While Defendants offer testimony in such paragraphs to support the fact that third-parties submitted complaints, Defendants do not submit those statements for the truth of the matter asserted in those complaints but rather to show that they received complaints about Plaintiff. As such, the statements are not hearsay.

Accordingly, Plaintiff's evidentiary objections are OVERRULED.

## IV. DEFENDANTS' EVIDENTIARY OBJECTION

Defendants object to a letter written by Cynthia Christie in support of Plaintiff's opposition. Reply 7, ECF 108. In particular, Defendants object to Christie's statement that Plaintiff had more

work than her "cohorts" as lacking foundation and for being an unsworn statement. Reply 7; Ex. 7 to Williams Decl. (Christie's letter). The Court SUSTAINS Defendants' objection because Christie's statement lacks foundation and was not made under the penalty of perjury.

## V. PLAINTIFF'S REQUEST TO DENY OR CONTINUE RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff requests that the Court deny Defendants' motion for summary judgment on the grounds that they failed to produce discovery. Opp'n 2. According to Plaintiff, on May 16, 2018, Magistrate Judge Howard R. Lloyd ordered Defendants to make Calvin Pang and Cynthia Christie available for deposition and to produce documents that are responsive to Plaintiff's request for production. *Id.* Plaintiff argues that Defendants have not produced certain documents and that Judge Lloyd did not order the deposition of another individual, Lisa Sater, despite the fact that Plaintiff requested the deposition in her discovery letter brief. *Id.* As an alternative, Plaintiff requests a continuance of the Court's ruling on the instant motion until after Defendants produce discovery documents. *Id.*

Plaintiff does not appear to contend that Defendants failed to produce Pang and Christie for depositions. In fact, the evidence shows that Plaintiff deposed Pang and Christie on May 25, 2018. *See* Exs. 6 and 48 to Williams Decl.

In regard to the document production, if Plaintiff believed that Defendants did not produce documents in compliance with Judge Lloyd's May 16, 2018 Order, the proper recourse would have been to seek relief from the magistrate judge to whom all discovery matters have been referred. Insofar as the deposition of Sater is concerned, Plaintiff fails to provide any reason why she did not request clarification from Judge Lloyd or seek relief from Judge Lloyd's order to the undersigned judge immediately after receiving the May 16, 2018 Order. For these reasons, the Court DENIES Plaintiff's request to defer ruling on the instant motion or to rule it in her favor on this motion.

//

//

//

9

# VI.    DISCUSSION

## A.    Exhaustion

Defendants argue that Plaintiff did not exhaust any of her claims based on violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and California's Fair Employment and Housing Act ("FEHA").  Mot. 11–12.

A plaintiff asserting claims under Title VII, ADEA, and FEHA must first exhaust her administrative remedies.  In this context, Title VII and ADEA generally require a plaintiff to file an EEOC charge within 300 days after the alleged unlawful conduct occurred if the plaintiff initially instituted proceedings with a state agency.  *See* 42 U.S.C. 2000e-5(e) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA).  "Even when an employee seeks judicial relief for claims not listed in the original EEOC charge, the [civil] complaint 'nevertheless may encompass any discrimination *like or reasonably related* to the allegations of the EEOC charge.'"  *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citation omitted) (emphasis added).  Courts may hear claims even if they are not included in the EEOC charge if an "EEOC investigation would have encompassed the additional charges."  *Green v. Los Angeles Cty. Superintendent of Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989).

Similarly, the FEHA requires the plaintiff to "fil[e] a written charge with DFEH within one year of the alleged unlawful employment discrimination, and obtain[] notice from DFEH of the right to sue."  *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001).  "Allegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust."  *Id.* at 897.  That said, like Title VII and ADEA, allegations that are not listed in the DFEH charge do not go beyond the scope of that charge if they are "like or reasonably related to" claims filed with DFEH.  *Id.* (citing *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal.App.4th 846, 859 (Ct. App. 1994)).  The procedural requirement for exhaustion is to "be construed liberally for the accomplishment of the purposes [of FEHA]."  *Id.* (citing Cal. Gov't Code § 12993(a)).

Defendants contend that Plaintiff did not exhaust all of her claims because her DFEH and EEOC charges "describe acts of discrimination only in the most general terms, such as "[d]enied

equal pay" and "denied promotion." Mot. 12. Defendants assert that those charges provide "no facts, such as how each event occurred, where, or when," and thus are insufficient to satisfy the exhaustion requirement. *Id.* (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1403 (2d Cir. 1993); *Jefferson v. Time Warner Cable*, No. CV 11-5637, 2012 WL 12887692, at \*10 n.34 (C.D. Cal. July 23, 2012)).

The Court rejects Defendants' argument that Plaintiff failed to exhaust *all* of her claims on the grounds that the allegations in the DFEH and EEOC charges are generic. The cases cited by Defendants, *Butts* and *Jefferson*, are distinguishable from this case. *Butts* held that an EEOC charge's allegations that Plaintiff had "consistently been the target of discriminatory practices and treatment" and that she was "denied promotional opportunities and consideration based on [her] race and sex" were too general to satisfy the exhaustion requirement. 990 F.2d at 1403. In *Jefferson*, the court recognized that a charge simply stating that "I believe I have been discriminated against because of my race, Black" did not exhaust the plaintiff's administrative remedies. 2012 WL 12887692, at \*10 n.34. Unlike those allegations referenced in *Butts* and *Jefferson*, Plaintiff's DFEH and EEOC charges contain specific allegations that are not conclusory assertions of discrimination. For example, Plaintiff alleged that she was denied training and was "given more work than others in her professional class, denied adequate staffing and resources, harassed, and treated in a demeaning disrespectful manner." DFEH Charge 565.[9] According to her DFEH charge, the discriminatory treatment intensified after Plaintiff complained about her treatment. *Id.* She further alleged that she was wrongfully denied "family/medical leave." *Id.* In the EEOC charge (which incorporates the DFEH charge), Plaintiff specifically alleged that she was not given the same opportunity and information to perform her work and did not receive the rate of pay consistent with others. *See* EEOC Charge. Those allegations go beyond the mere conclusory statement that Plaintiff was discriminated against based on her race, age, and gender. Moreover, Defendants cite to no authority showing that a plaintiff must specify how and where each discriminatory act occurred and who committed that act in her administrative charge to

---

[9] The cited page for the DFEH charge refers to the Bates number at the bottom of each page.

exhaust claims. *Cf. Sosa v. Hiraoka*, 920 F.2d 1451, 1457 (9th Cir. 1990) (holding that the plaintiff specifically alleged in his charge that the defendants "engaged in a pattern and practice of retaliating against [the plaintiff]" and that the charge encompassed other allegations pled in his civil complaint). Claims that are not specifically listed in the original charge may still be presented in a civil complaint if they are "like or reasonably related to allegations of the . . . charge." *Freeman*, 291 F.3d at 636.

Accordingly, the Court finds that Plaintiff's DFEH and EEOC charges contain sufficient allegations that exhaust her administrative remedies concerning the Title VII, ADEA, and FEHA claims. Therefore, the Court DENIES Defendants' motion for summary judgment that Plaintiff has not exhausted any of her claims. To the extent that Defendants raise specific challenges to Plaintiff's allegations not listed in the charges, the Court will determine whether those allegations are "like or reasonably related to" to the claims in her charges.

### B. Discrimination Claims

Plaintiff asserts discrimination claims based on race, gender, and age. As a preliminary issue, Defendants contend that Plaintiff produces no direct evidence of discrimination and thus the *McDonnell Douglas* test applies. Mot. 13 (citing *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973)). Plaintiff does not argue that she has direct evidence. In fact, Plaintiff also relies on the burden shifting test in *McDonnell Douglas*. *See* Opp'n 19, 22. The Court agrees with Defendants and finds that the *McDonnell Douglas* test is applicable because there is no direct evidence that supports Plaintiff's claims.

### i. *McDonnell Douglas* Standard

The *McDonnell Douglas* burden-shifting framework applies to Title VII, ADEA, and FEHA claims. *McDonnell Douglas*, 411 U.S. at 802; *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012); *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017). Under that test, the plaintiff must first establish a prima facie case of discrimination. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

To establish a prima facie case, plaintiffs must show: "(1) that they are members of a protected class; (2) that they were qualified for their positions and performing their jobs

12

satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly situated individuals outside [their] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Id.* (internal citation and quotation marks omitted) (alteration in original); *see also Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). "At the summary judgment stage, the requisite degree of proof necessary to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)) (internal quotation marks and italics omitted).

If a plaintiff establishes a prima facie case, the burden of production, but not persuasion, shifts to the employer to articulate some "legitimate, nondiscriminatory reasons for the challenged action." *Hawn*, 615 F.3d at 1155 (citation omitted). If this burden is met, "the plaintiff must then demonstrate that the proffered nondiscriminatory reason is merely a pretext for discrimination." *Lyons*, 307 F.3d at 1112.

To establish pretext, the plaintiff must offer "specific, substantial evidence of pretext." *Wallis*, 26 F.3d at 890 (quoting *Steckl v. Motorola*, 703 F.2d 392, 393 (9th Cir. 1983)). "The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise unbelievable." *Dominguez-Curry v. Nev. Transp. Dept.* 424 F.3d 1027, 1037 (9th Cir. 2005) (citation omitted).

### ii. Race Discrimination Claims

Defendants argue that Plaintiff identifies numerous incidents as bases for her race discrimination claims. Mot. 13 (citing Ex. G to Bussey Decl. ("Interrogatory Resps.") 19–20, ECF 88-7). The Court addresses the bases for Plaintiff's claims by category as the parties have done in their briefs.

### a. Interim Position for Director of Care Management

Plaintiff claims that she was discriminated against by not having an opportunity to apply for the interim Director of Care Management position. Interrogatory Resps. 1; Opp'n 20. Johnson

appointed Fogle to act as the interim Director of Care Management after Dionette Kelton passed away.

Defendants argue that Plaintiff's claim based on the interim Director of Care Management position is unavailing. Mot. 13. The Court agrees. First, this claim is time barred because it occurred in September 2013 more than one year before Plaintiff filed her DFEH charge and the EEOC charge in October and December 2014, respectively. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (holding that discriminatory claims are based on discrete acts and that the plaintiff can "only file a charge to cover discrete acts that 'occurred' within the appropriate time period").

Second, even if Plaintiff's claim were timely, her claim is deficient. Although Plaintiff was not able to apply for the interim position, Fogle's appointment, which involved no change in his salary and benefits, did not materially affect Plaintiff's employment in an adverse way. *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 704 F. Supp. 2d 859, 865 (N.D. Cal. 2010) (holding that the fact that plaintiff was not placed as an "acting supervisor," which was temporary and involved no change in benefits, did not constitute an "adverse employment action"). Accordingly, Plaintiff has failed to show a prima facie case of discrimination with respect to the interim Director of Care Management position. *Hawn*, 615 F.3d at 1155 (holding that a plaintiff must show that she experienced an adverse employment action to establish a prima facie case).

Moreover, Defendants have articulated "legitimate, nondiscriminatory reasons" why Johnson appointed Fogle to act as the interim director. *Hawn*, 615 F.3d at 1155. Kelton, then Director of Care Management, unexpectedly passed away in September 2013 and there were no arrangements to immediately identify her successor. Johnson Decl. ¶¶ 4–5. Under those exigent circumstances, it was entirely reasonable for Johnson to ask Fogle to act as interim director because he had worked at VMC for several years and had significant work experience. *Id.* ¶ 7. On the other hand, Johnson reasonably did not consider Plaintiff for the interim position because Plaintiff had worked less than five months and had yet to receive a performance evaluation. *Id.* ¶ 9. As such, the Court finds that Defendants have articulated a legitimate reason why Johnson

appointed Fogle as interim director.

Because Defendants have met their burden to show a legitimate reason, Plaintiff must demonstrate that the stated reasons were merely pretext for discrimination. A plaintiff can show pretext "indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Indirect, circumstantial evidence must be "specific and substantial." *Vasquez*, 349 F.3d at 642. Here, Plaintiff has not provided any "specific and substantial" evidence why Defendants' reasons for appointing Fogle under exigent circumstances lack credence. *Id.*

Accordingly, the Court finds that the evidence taken as a whole does not create a factual issue as to whether Johnson's appointment of Fogle as interim director was based on discriminatory reasons. Defendants' motion for summary judgment on Plaintiff's race discrimination claim with respect to the interim director position is GRANTED.

### b. Permanent Position for Director of Care Management

Defendants challenge Plaintiff's claim that she was discriminated against based on her race because she was denied an interview for 11 months and was not hired for the permanent Director of Care Management position. Mot. 14. According to Defendants, Johnson delayed conducting interviews for that position until multiple applications were received. *Id.* Defendants also contend that there are legitimate reasons for hiring Lisa Stroud who was more qualified than Plaintiff in several aspects. *Id.* In Defendants' view, Plaintiff's sole evidence of pretext is a "rumor" that Johnson wanted to hire a "friend." *Id.* Defendants argue that the "rumor" is insubstantial evidence and unrelated to race. *Id.*

Plaintiff responds that Defendants attempted to change the job requirement to allow Fogle, who had no social work or nursing degree, to qualify for the Director of Care Management position. Opp'n 4–5, 20. As a result, Plaintiff argues, her initial application "sat for 11 months." *Id.* at 4, 20. Plaintiff also contends that her second application and another African American female's application were not considered until a "white applicant [(i.e., Stroud)] applied months later and was given the job, even though she had no union or Medi-Cal experience." *Id.*; *see also id.* at 5. Plaintiff further argues that the interview panel largely consisted of "white staff" while

1   her rehab case managers were intentionally omitted from the panel.  *Id.* (citing Ex. 19 to Williams

2   Decl.).

3          As a threshold issue, the Court finds that Plaintiff has established a prima facie case of race

4   discrimination.  There is no dispute that Plaintiff is African American and was qualified for the

5   Director of Care Management position.  Plaintiff experienced an adverse employment action

6   because she was not promoted to the director position, and Stroud who is not an African American

7   was hired as the director.

8          The Court next turns to whether Defendants had legitimate, nondiscriminatory reasons for

9   delaying interviews for the permanent direction position and had reasonable explanations for

10  hiring Stroud.  Defendants contend that Johnson waited until multiple applications were received

11  before deciding to conduct interviews.  Mot. 14.  Indeed, Johnson declares that she did not

12  conduct an interview when only Plaintiff had applied because it was desirable to choose from

13  multiple candidates.  Johnson Decl. ¶ 10.  Johnson was also aware that Plaintiff had been involved

14  in interpersonal conflicts and thought that Plaintiff had limited management experience.  *Id.*

15  Johnson then reposted the job announcement several times until she received three qualified

16  applications including Plaintiff's submission.  *Id.* ¶ 11.  It is reasonable for a supervisor to wait to

17  fill a vacant position until he or she can review multiple candidates.  As such, the Court finds that

18  Defendants have articulated legitimate reasons for not interviewing Plaintiff until three qualified

19  applications were submitted.

20         Defendants also contend that Stroud was hired because she had "superior qualifications"

21  and most interview panel members chose her.  Mot. 14; Reply 3.  Indeed, numerous panel

22  members recognized that Stroud was qualified and had a desirable background.  *See, e.g.*, Ex. X to

23  Bussey Decl. 719, 745[10] (commenting that Stroud has a strong and varied clinical background,

24  proven track record in multiple hospitals, and strong interpersonal skills).  The majority of the

25  panel selected Stroud as the top candidate.  *Id.* at 707.  The Court thus finds that there is ample

26  evidence to support Defendants' "legitimate, nondiscriminatory reasons" for hiring Stroud as the

27

28  _____

[10] The cited page number for Ex. X to the Bussey Declaration refers to the Bates number at the
bottom of each page.

1   Director of Care Management.  *Hawn*, 615 F.3d at 1155.

2        Because Defendants have met their burden to articulate legitimate, nondiscriminatory

3   reasons, Plaintiff must now "demonstrate that the proffered nondiscriminatory reason[s] [are]

4   merely a pretext for discrimination."  *Lyons*, 307 F.3d at 1112.

5        Plaintiff challenges Defendants' claim that a racially diverse group of employees

6   interviewed the three candidates.  Opp'n 5.  Plaintiff first states that the interview appointment list

7   (Ex. 18 to Williams Decl.) is inaccurate because Romida Magnampo and Barbara French actually

8   did not interview her while medical staff, Clifford Wang and Jen Eng, participated in the

9   interview.  *Id.*  However, the inaccuracy of the interview appointment list is irrelevant because

10  Defendants relied on the interview score sheet (Ex. X to Bussey Decl.) but not on any evaluation

11  submitted by Magnampo and French.

12       Plaintiff further argues that Johnson did not interview either Plaintiff or the other

13  candidate, who is also an African American, until Lisa Stroud applied two months later.  Opp'n 5.

14  It is undisputed that Johnson did not decide to interview the candidates until she received the third

15  (i.e., Stroud's) application.  Defendants respond that while Plaintiff asserts that Johnson was

16  waiting "until she received an application from a Caucasian," there is no evidence that Johnson

17  knew the ethnicity of the applicants because that information was only accessible to Human

18  Resources.  Reply 4 (citing Jurado Decl. ¶¶ 3–5, ECF 110).

19       Defendants raise strong arguments in support of their position.  However, it is undisputed

20  that Johnson knew that Plaintiff is an African American.  As such, while Johnson may not have

21  known about the race of the latter two candidates, a reasonably jury may infer that Johnson chose

22  to delay the interview process due to Plaintiff's race until multiple applications were submitted.

23  This inference is bolstered by the composition of the interview panel, which Johnson assembled

24  (Ex. 19 to Williams Decl.) and included only one African American out of twenty-two members

25  (Williams Decl. ¶ 8).  Defendants do not dispute this composition.

26       Moreover, the evidence shows that, on October 7, 2014, one of Plaintiff's acute rehab case

27  managers sent an email to Johnson about participating in the interview panel.  Ex. 19 to Williams

28  Decl.  Apparently, Johnson did not respond to that email.  Williams Decl. ¶ 8.  During the hearing,

Defendants noted that the email was sent on October 7, 2014, which was only one week before the interviews were scheduled. The Court, however, finds that the one-week time period to be irrelevant. The point is that a reasonable jury may infer that when Johnson sent out an email soliciting interview panel members, she intentionally omitted Plaintiff's acute rehab case managers and decided not to respond to the October 7, 2014 email as part of her racial discrimination against Plaintiff. *See* Ex. 19 to Williams Decl. (email inquiring whether Johnson overlooked inclusion of acute rehab case managers in the interview panel).

Based on the foregoing, when viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has provided "specific, substantial evidence of pretext" and that Defendants' proffered explanation may be unworthy of credence. *Wallis*, 26 F.3d at 890; *Dominguez-Curry*, 424 F.3d at 1037. Plaintiff has produced sufficient evidence to raise a genuine issue of material fact as to whether Defendants' proffered nondiscriminatory reasons are merely a pretext for racial discrimination. *Dominguez-Curry*, 424 F.3d at 1037. Although Plaintiff's evidence is not strong, the Court cannot conclude that no reasonably jury could find discrimination.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's racial discrimination claim based on Plaintiff's application and failure to be promoted to the permanent Director of Care Management position is DENIED.

### c. Fitness for Duty

Defendants challenge Plaintiff's race discrimination claim based on her allegation that she was placed on administrative leave pending a mandatory fitness for duty examination. Mot. 14. According to Defendants, other employees' concern regarding Plaintiff's belief that the County of Santa Clara bugged her phone and was surveilling her provided a non-discriminatory justification to require her to submit to a fitness for duty examination. *Id.*; Reply 4. Defendants further argue that Plaintiff failed to exhaust this claim because it was not raised in her DFEH and EEOC charges which were filed more than a year earlier. Mot. 14; Reply 4.

Plaintiff responds that she made a statement about not having a phone rather than it being bugged. Opp'n 20. Plaintiff also argues that Defendants sought a medical diagnosis from a doctor

who never treated her, and thus Defendants' conduct was a pretext for discrimination. *Id.* In addition, Plaintiff asserts that this event is reasonably related to her administrative charges.

The Court agrees with Defendants that Plaintiff's claim based on her administrative leave was not exhausted by the DFEH and EEOC charges. Those charges were filed more than one year before Plaintiff was placed on administrative leave in January 2016. Also, the allegations in the charges relate to the purported denial of work opportunities as opposed to Plaintiff's behavior and her administrative leave. As such, the Court finds that an EEOC investigation that would have occurred when she filed her charges would not have encompassed Plaintiff's claims that involve her leave and request for a fitness for duty examination. *Green v. Los Angeles Cty. Superintendent of Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989) ("[I]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" (quotation omitted)). Moreover, as Defendants point out (Reply 4), Lisa Stroud, who was not named in the administrative charges, was the person who requested Plaintiff to take a fitness for duty examination. *See* Williams Decl. ¶ 28.

Even assuming Plaintiff did exhaust her claim, the Court finds that the claim fails because Defendants have provided "legitimate, nondiscriminatory reasons" for requiring Plaintiff to take a fitness for duty examination. *Hawn*, 615 F.3d at 1155 (citation omitted). Plaintiff's own declaration shows that other employees raised concerns about her statements that she thought her phone was bugged. Williams Decl. ¶ 28. Indeed, employees reported their concerns to supervisors. *See, e.g.*, Ex. Z to Bussey Decl. 1216,[11] ECF 88-26. Based on the employees' concerns, Defendants could reasonably request a fitness for duty examination. Although Plaintiff argues that Defendants asked her to receive a medical diagnosis from an unfamiliar doctor, that fact is not substantial evidence of a pretext for discrimination. Moreover, Plaintiff's own evidence shows that she submitted her doctor's verification of her medical leave three days after Defendants placed her on administrative leave. Ex. 51 to Williams Decl.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to

---

[11] The cited page number for Ex. Z to the Bussey Declaration refers to the Bates number at the bottom of each page.

Plaintiff's race discrimination claim based on her administrative leave and request for a fitness for duty examination.

### d. Evaluations, Counseling, and Reprimands

Plaintiff identifies her performance evaluations, counseling by supervisors, and "reprimands" as bases for her race discrimination claims. *See* Interrogatory Resps. 19–20. For example, Plaintiff received two performance evaluations which both contained positive and negative feedback. Ex. J to Bussey Decl.; Ex. Y to Bussey Decl. As another example, Plaintiff states that she was reprimanded by Fogle when she responded that staff might complain to their union due to his request concerning the emergency transfer of a patient to another hospital. Williams Dep. 158:5–159:14, 170:16–20.

Defendants argue that the incidents which Plaintiff relies on do not constitute adverse employment actions. Mot. 14–15. Defendants also contend that Plaintiff's claims based on those incidents are not exhausted because they do not appear in her administrative charges and they occurred many months after she filed the charges. Plaintiff responds that she does not take issue with mere evaluations and counseling but with the different treatment she faced with respect to leadership positions, salary, denial and interference with FMLA leave, forcing a resignation, and harassment. Opp'n 21.

Regarding the exhaustion argument, although Defendants assert that the challenged incidents occurred many months after Plaintiff filed her charges, they do not point to specific evidence establishing when those incidents occurred. As such, the Court finds that Defendants have not shown that the racial discrimination claims based on the challenged incidents are not exhausted. *See Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch,* 572 F.3d 1039, 1046 n. 7 (9th Cir.2009) ("[W]hether a plaintiff in a Title VII action has timely exhausted her administrative remedies is an affirmative defense, [so] the defendant bears the burden of pleading and proving it." (internal quotation marks omitted) (modification in original)).

Nevertheless, Plaintiff's claims fail. After reviewing the evidence, the Court finds that Plaintiff has not shown that Defendants took "adverse employment action[s]" against her based on the performance evaluations and other incidences of supervisor counseling. The evaluations

contain both positive statements and criticism that conform to normal employment practice. *See Lyons*, 307 F.3d at 1118 (holding that a mere "mediocre" evaluation does not give rise to a negative employment action). The "counseling" and "reprimands" that Plaintiff complains of were normal workplace supervision. *See Fay v. Costco Wholesale Corp.*, No. CV 10-00834, 2012 WL 683176, at *6 (C.D. Cal. Mar. 2, 2012), *aff'd*, 554 F. App'x 614 (9th Cir. 2014) (holding that mere oral criticism without more does not constitute adverse employment action). Accordingly, the Court concludes that Plaintiff has not shown a prima facie case of racial discrimination based on those incidents. Therefore, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's discrimination claim based on her performance evaluations and counseling and alleged reprimands by her supervisors.

### e. Salary

Plaintiff asserts that she was denied an adequate salary and that this allegation supports a racial discrimination claim. *See* Interrogatory Resps. 34. According to Plaintiff, she started at step one[12] when she was hired by Dionette Kelton despite the fact that she previously worked for VMA as a rehab case manager. Opp'n 21. Plaintiff contends that Kelton misled her by stating that it would take months to approve a higher salary despite the fact that the Board of Supervisors meetings occurred every two weeks. *Id.* at 3, 21. In addition, Plaintiff claims that other minorities were underpaid while Marah Gebala received a higher salary although being less qualified. *Id.* at 21–22.

Defendants respond that even if the Board of Supervisors meetings occurred biweekly, Plaintiff's start date would have been delayed because there was no guarantee that her request would be decided within two weeks and she did not raise the salary issue until a few days before her start date. Reply 5. On this basis, Defendants contend that there is no evidence that Kelton intended to discriminate Plaintiff. The Court agrees. While it is possible that Kelton may have overestimated the time it would take for the Board of Supervisors to decide the salary issue, it was reasonable for Kelton to inform Plaintiff that a salary request may delay her start date because

---

[12] As Defendants point out, Plaintiff's deposition testimony and hiring records show that Plaintiff started at step three. Williams Dep. 28:6–20; Ex. EE to Bussey Decl., ECF 88-31.

there was no guarantee when a decision could be made.  On the other hand, Plaintiff does not

provide any evidence that Kelton's explanation is "unworthy of credence" or exhibits a

discriminatory motive.  *Burdine*, 450 U.S. at 256.

Defendants further contend that Plaintiff's reliance on Gebala's salary fails to show

discrimination.  Defendants provide evidence showing that VMC was required to pay a higher

salary to Gebala, who was a long-time county employee, in accordance with VMC's Merit System

Rules.  Mot. 15 (citing Moresco Decl. ¶¶4–14; Ex. FF to Bussey Decl., ECF 88-32).  As such,

Defendants have shown a "legitimate, nondiscriminatory reason[]" why Gebala was paid a higher

salary.  *Hawn*, 615 F.3d at 1155.  Plaintiff has not demonstrated that Defendants' reason based on

VMC's Merit System Rules is "merely a pretext for discrimination."  *Lyons*, 307 F.3d at 1112.

Defendants further argue that Plaintiff raises a new theory undisclosed in her interrogatory

responses.  Reply 6.  That theory pertains to the salary of Kim Sabino.  Plaintiff contends that

Kelton hired Sabino and paid her more salary than what Linh Mata and Inder Preet received.

Opp'n. 9–10.  Plaintiff identifies Mata as Vietnamese and Preet as Indian.  Williams Decl. ¶ 16.

While Plaintiff asserts that Sabino is Caucasian, Preet identifies Sabino as "Filipino" (Ex. 1 to

Bussey Decl. ("Preet Dep.") 11:11–13, ECF 109-1).

In any case, Plaintiff may not rely on her assertion that Sabino's salary is evidence of race

discrimination.  First, Plaintiff did not disclose that theory in her interrogatory responses.  Second,

Plaintiff's assertion directly contradicts her earlier position that the higher pay of Gebala, who is

Asian, evinces race discrimination.  Plaintiff now contends that "minority" nurses, including Mata

and Preet who are Asian and South Asian, received lower pay.  The inconsistencies between

Plaintiff's positions show that she has no support for her contention that Defendants engaged in

race discrimination with respect to salary.  Further, the evidence shows that Plaintiff's initial

salary was at step 3, not step 1, thus she has not shown discrimination on this basis.

For the above reasons, the Court GRANTS Defendants' motion for summary judgment as

to Plaintiff's discrimination claim based on salary discrepancies.

### f.  Training

Defendants argue that although Plaintiff asserts discrimination claims based on allegations

that she was denied training, participation in meetings, and approval to attend a career development class, those assertions do not support a showing that Plaintiff suffered an adverse employment action. Mot. 15–16. Plaintiff counters that she "was left in the dark" and had to work harder to obtain the information she needed. Opp'n 21. Plaintiff also contends that while "Gebala was trained by Mr. Vega and shadowed her [sic] for 2–3 months," Plaintiff did not receive such an opportunity. *Id.* at 14; Williams Decl. ¶ 26.

Upon reviewing the evidence, the Court concludes that Plaintiff's evidence pertaining to the alleged denial of training, omission from meetings, and denial to attend a career development class is insufficient to show adverse employment actions. For a failure to train or an exclusion from meetings to constitute an adverse action, the employee must show that the denial or exclusion materially impacted his or her employment condition. *See Pierce v. Santa Maria Joint Union High Sch. Dist.*, No. 211CV09463, 2012 WL 12850434, at *4 (C.D. Cal. Nov. 20, 2012), *aff'd*, 612 F. App'x 897 (9th Cir. 2015); *Conwright v. City of Oakland*, No. C09-2572, 2012 WL 1945494, at *4 (N.D. Cal. May 30, 2012). Plaintiff has not established that her employment was materially affected due to the purported lack of training and exclusion from meetings. Even assuming Gebala did receive additional training by being allowed to shadow Juno Vega, that fact does not show that Plaintiff suffered an adverse change in her employment condition. Contrary to her own assertions, Plaintiff testifies that she "accomplished many things." Williams Decl. ¶ 4. In fact, Plaintiff received positive feedback regarding her operational competence. Ex. J to Bussey Decl. 997; Ex. Y to Bussey Decl. 340.

Moreover, the evidence shows that Defendants approved Plaintiff's attendance at a career development conference which she requested on October 9, 2015. Exs. GG to KK to Bussey Decl., ECF 88-33 to 88-37. Johnson specifically ensured that Plaintiff's request for attendance was approved by October 13, 2015 (the following business day) for the conference that began on October 19, 2015. Ex. JJ to Bussey Decl. This incident does not show that Plaintiff faced a negative employment action. In addition, to the extent that Plaintiff asserts a discrimination claim based on this incident, that claim is not exhausted. As Defendants argue (Mot. 16), this incident occurred in October 2015, which is about one year after Plaintiff filed her administrative charges

1    in 2014.  An investigation conducted in late 2014 would not have encompassed this claim.

2    *Vasquez*, 349 F.3d at 645.

3        Accordingly, the Court GRANTS Defendants' motion for summary judgment as to

4    Plaintiff's discrimination claim with respect to the denial of training, exclusion from meetings, and

5    denial to attend career development classes.

6                    **g.  Amount of Work and Number of Subordinates**

7        Defendants challenge Plaintiff's racial discrimination claim based on the amount of work

8    and number of subordinates.  Mot. 16.  As a threshold issue, Defendants contend that this claim is

9    not exhausted because Plaintiff's administrative charges "make no mention of any removal of

10   subordinates."  *Id.*  However, Plaintiff's DFEH charge alleged that Plaintiff was "denied adequate

11   staffing."  DFEH Charge 565.  Thus, Plaintiff's claim based on the removal of subordinates is

12   "reasonably related" to her administrative charges.  *Rodriguez*, 265 F.3d at 896.  The Court

13   therefore is unpersuaded by Defendant's exhaustion argument.

14       Defendants further contend that Plaintiff "complains both that she had too many

15   subordinates . . . and that . . . [some] were at times taken away from her."  Mot. 16.  Indeed,

16   Plaintiff asserts that she had about thirty-four staff members to supervise while other managers,

17   Juno Vega and Marah Gebala, respectively, had one and thirteen subordinates under supervision.

18   Williams Decl. ¶¶ 6, 25.  But Plaintiff also takes issue that a clerical group was removed from her

19   oversight.  *Id.* ¶ 15.  After reviewing the evidence, the Court concludes that Plaintiff's

20   discrimination claim based on the alleged amount of work and number of subordinates is

21   unavailing.

22       First, Plaintiff's assertions are internally inconsistent because she complains both that she

23   had too many subordinates and that some were being removed.  The inconsistencies do not

24   support a showing that the number of staff members which she had to manage adversely affected

25   her employment or that the number of supervisees was raised or lowered based on racial

26   discrimination.

27       Second, Plaintiff testifies that it was not a problem that she had to manage more

28   subordinates than other managers.  Williams Dep. 432:25–434:25.  Plaintiff cannot now base her

claim on the assertion that she suffered adverse consequences because she supervised more staff than other managers. Moreover, the fact that Plaintiff managed a larger number of subordinates than other managers does not necessarily mean that Plaintiff had more work. For example, Plaintiff testified that although Vega had one person to manage, he had other responsibilities as the patient flow coordinator. *Id.* at 434:5–17. In fact, Vega had previously managed more staff members than Plaintiff (*id.* at 433:16–22), but he then moved to a new full-time project that involved non-managerial work (Preet Dep. 22:17–24:13). For these reasons, Plaintiff has failed to show that she suffered an adverse employment action.

Third, even if Plaintiff were able to establish a prima facie case, Defendants provide "legitimate, nondiscriminatory reasons" why additional supervisees were assigned to her. *Hawn*, 615 F.3d at 1155. Plaintiff was additionally assigned the group consisting of rehabilitation case managers based on the request of the Rehabilitation Administrator and Director who are not accused of discrimination. *See* Ex. 2 to Bussey Decl., ECF 109-2. Defendants also point out that the second clerical group was assigned to Plaintiff, because according to her, she was the only staff member who had knowledge of what the clerical support team does. Reply 7. Plaintiff provides no "specific, substantial evidence of pretext" for discrimination that rebuts Defendants' reasons. *Wallis*, 26 F.3d at 890.

Plaintiff also takes issue with the fact that the clerical group was later removed from her oversight. Opp'n 9. However, it was reasonable for Johnson to reassign the clerical group because the then-head of that group, Tammy Ramsey, requested the change in the reporting structure because Ramsey and Plaintiff had a dispute. Johnson Decl. ¶ 15. Johnson decided to have Ramsey report to Fogle who had assumed responsibility of the department's revenue cycle, which was closely related to the clerical group's work. *Id.* Those reasons are "legitimate, nondiscriminatory reasons" to remove the clerical group from Plaintiff's supervision, and the Court does not find any substantial evidence of pretext for discrimination. *Hawn*, 615 F.3d at 1155.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's discrimination claim based on the amount of work and number of Plaintiff's

1  subordinates.

2  ### h. Text Messages and Emails

3  Plaintiff asserts that she received constant text messages and emails compared to other

4  managers and was scrutinized daily. *See* Interrogatory Resps. 19–20; Williams Decl. ¶ 9.

5  Defendants contend that those incidents do not constitute adverse employment actions. Mot. 16.

6  The Court agrees with Defendants' argument. Courts have held that "barrages" of emails

7  or "close scrutiny" are insufficient to show "adverse employment actions" insofar as the plaintiff's

8  employment was not materially affected. *Negley v. Judicial Council of California*, No. C 08-

9  03690 MHP, 2010 WL 11545605, at *8 (N.D. Cal. June 21, 2010), *aff'd*, 458 F. App'x 682 (9th

10  Cir. 2011) (rejecting the argument that barrages of emails and close scrutiny were "adverse

11  employment actions" because they did not affect the plaintiff's "compensation, terms, conditions,

12  or privileges . . . of employment" (citation omitted)). Plaintiff provides no evidence showing that

13  the text messages, emails, or scrutiny she received materially affected her conditions of

14  employment.

15  Even if the messages and scrutiny constitute adverse employment actions, Defendants have

16  provided legitimate reasons why Plaintiff allegedly received constant messages and scrutiny. As

17  to the text messages and emails, the fact that Plaintiff supervised staff members who covered 24

18  hours a day supports a legitimate reason why Plaintiff received constant messages and presumably

19  more than her peers. Williams Dep. 502:21–503:24. Regarding the scrutiny Plaintiff received, the

20  record shows that Fogle received complaints about Plaintiff. Johnson Decl. ¶ 8. On the other

21  hand, Plaintiff does not point to evidence showing that Gebala, the other manager, was subject to

22  complaints of employees. As such, there is a legitimate justification why Plaintiff may have

23  received additional scrutiny compared to her peers. The Court concludes that no reasonable jury

24  would find that Defendants' explanations are "unworthy of credence," and thus Plaintiff has failed

25  to rebut Defendants' nondiscriminatory reasons. *Burdine*, 450 U.S. at 256.

26  Accordingly, Defendants' motion for summary judgment on Plaintiff's discrimination

27  claim as to text messages, emails, and scrutiny is GRANTED.

28

### i. FMLA

Defendants argue that Plaintiff cannot assert her discrimination claim based on "a denial of [FMLA] leave" because she was granted leave. Mot. 17. Plaintiff responds that Defendants initially denied her leave and falsely stated that she did not timely submit her paperwork. Opp'n 22. Plaintiff also contends that Defendants' attitude contributed to the discrimination and attempt to "push [her] out." *Id.* In Plaintiff's view, Johnson and Fogle harassed Plaintiff when she requested FMLA leave. *Id.* at 10.

The Court finds that Plaintiff did not suffer an adverse employment action due to her request for FMLA leave. As Defendants point out, Plaintiff was granted and did receive FMLA leave for the period between July 9, 2014 and August 4, 2014. Williams Dep. 127:23–128:7. Moreover, Plaintiff's contention that Johnson and Fogle harassed Plaintiff is unavailing. The evidence shows that Johnson and Fogle reached out to Plaintiff multiple times so that she could timely submit her FMLA paperwork. *See* Ex. 35 to Williams Decl. (email communications).

Accordingly, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's discrimination claim based on her FMLA leave.

### j. Other Allegations

Defendants argue that Plaintiff asserts various other incidents as bases for her race discrimination claims. Mot. 17 (citing Interrogatory Resps. 19–20). For instance, Plaintiff claims that (i) Johnson failed to timely provide paperwork for a manager presentation, (ii) Plaintiff's performance evaluation indicated that she needed to complete performance reviews, (iii) Plaintiff was told to prioritize certain policies over other areas, and (iv) Johnson refused to approve funding for a clerical support position. Interrogatory Resps. 19–20. Defendants contend that the various incidents are not listed in Plaintiff's administrative charges and are thus unexhausted. The Court is unpersuaded by Defendants' argument. The various incidents are "reasonably related" to the charges' allegations that Plaintiff was denied resources, harassed, and treated in a demeaning respectful manner (DFEH Compl. 565), and would be "within the scope of . . . an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Freeman*, 291 F.3d at 636.

Defendants also contend that one incident—Johnson failed to meet with Plaintiff's staff to discuss the future status of the department—is time barred because it relates to a September 2013 meeting. Mot. 17 (citing Interrogatory Resps. 20). However, Plaintiff's interrogatory responses do not indicate the date of the meeting and Defendants do not point to other evidence to establish that date. As such, the Court is unable to determine whether the allegation regarding Johnson's failure to meet with Plaintiff's staff is time barred.

Nevertheless, the Court finds that the various incidents that are not specifically categorized in prior subsections do not support a showing of an adverse employment action against Plaintiff. Those incidents generally reflect Plaintiff's challenges that are inherent in a workplace environment. Nor do the incidents establish that her employment conditions were materially affected in a negative way and thus they were not adverse employment actions. *See Negley*, 2010 WL 11545605, at *8. For example, Plaintiff takes issue with the fact that her performance evaluation noted that it is "important to ensure 100% compliance with performance appraisals." Interrogatory Resps. 20; *see also* Ex. J to Bussey Decl. 997. Such a comment does not reflect that Plaintiff was disciplined or received an actionable adverse treatment. Rather, the evaluation merely reminds Plaintiff to complete performance appraisals which is not an unusual request. Accordingly, the Court concludes that Plaintiff cannot sustain a race discrimination claim based on the various allegations not specifically categorized in prior subsections.

### k. Conclusion

Based on the foregoing, Defendants' motion for summary judgment as to the racial discrimination claim based on Plaintiff's application for the permanent Director of Care Management position is DENIED. Defendants' motion for summary judgment as to all remaining racial discrimination claims is GRANTED.

### iii. Gender Discrimination Claims

Defendants argue that Plaintiff identifies eight incidents in her interrogatory responses in support of her gender discrimination claims and that those incidents suffer from the same defects as the race discrimination claims. Mot. 18 (citing Interrogatory Resps. 21). Defendants also contend that one incident—Kelton removed a staff member from Plaintiff's supervision—is time

28

barred.  The Court agrees on this point.  That alleged incident occurred before Kelton passed away in September 2013, which is more than one year before the DFEH charge date of October 2014 (*see* DFEH Charge).  In response to Defendants' arguments, Plaintiff contends that the same underlying acts can form the basis for both race and gender discrimination claims.  Opp'n 22.

The incidents identified by Plaintiff do not show an adverse employment action against Plaintiff, let alone discrimination based on gender.  For instance, Plaintiff asserts that Fogle told her to "write up" a male staff member but Fogle later told that staff member not to worry about an investigation.  This incident does not show that Plaintiff's employment was materially affected in a negative manner.  Other non-conclusory assertions generally pertain to Plaintiff's statements that some male employees—George Fogle, Juno Vega, and Matthew Santos—were given certain job responsibilities.  *See* Interrogatory Resps. 21.  However, there is no evidence that those individuals received assignments because they were male.  For instance, Plaintiff takes issue with the fact that Johnson appointed Fogle to act as the interim Director of Care Management.  *Id.*  But, as discussed earlier, Johnson had legitimate and nondiscriminatory reasons to appoint Fogle under the exigent circumstances where Kelton suddenly passed away.  There is no evidence that Johnson appointed Fogle due to his gender.

Accordingly, the Court finds that Plaintiff has not produced evidence that shows a genuine issue of material fact as to whether Plaintiff suffered adverse employment actions due to her gender.  *Hutcherson v. Biologicals*, No. C-95-0468 MHP, 1997 WL 154379, at *4 (N.D. Cal. Mar. 21, 1997) (granting summary judgment in favor of the defendant because there was no evidence that the defendant discriminated against the plaintiff because of her gender).  Defendants' motion for summary judgment on Plaintiff's gender discrimination claims is GRANTED.

### iv.     Age Discrimination Claims

Defendants argue that Plaintiff identifies four incidents in her interrogatory responses in support of her age discrimination claims.  Mot. 18.  Plaintiff claims age discrimination on the grounds that she was (i) required to supervise more staff than Juno Vega, (ii) required to manage less staff than a younger manager, (iii) Johnson assigned oversight of online grievance retrievals to the younger manager, and (iv) Johnson put the younger manager "in charge" of the department

during Lisa Stroud's temporary absences. Interrogatory Resps. 22. Defendants contend that first two incidents overlap with Plaintiff's race discrimination claims. Mot. 18. Defendants also assert that the other two incidents, which involve the younger manager Marah Gebala, are not adverse employment actions. *See id.* In addition, Defendants argue that Plaintiff's claim based on the assertion that Johnson gave Gebala "oversight of certain online grievances" is not exhausted. *Id.* On this last point, the Court disagrees. This incident is "reasonably related" to the Plaintiff's EEOC charge alleging that Plaintiff was not given the same opportunity (*see* EEOC Charge) and therefore was exhausted. *Freeman*, 291 F.3d at 636.

In rebutting Defendants' arguments, Plaintiff responds that overlapping facts can form the basis for both race and age discrimination claims. *See* Opp'n 22.

ADEA protects individuals who are at least 40 years of age by making it unlawful for an employer to "discriminate against any individual . . . because of such individual's age." 29 U.S.C. §§ 631(a), 623(a). The Court has reviewed the evidence and concludes that there is no evidence to support Plaintiff's age discrimination claims. In her interrogatory responses, Plaintiff asserts that she was required to supervise more staff than Vega and that Johnson assigned less staff and more responsibilities to Gebala. Interrogatory Resps. 22. Those incidents do not support a prima facie case of age discrimination, because there is no evidence that Vega and Gebala were less than 40 years old at that time and that Plaintiff was treated less favorably than individuals younger than 40 years old. *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008) (holding that a plaintiff may establish a prima facie case by showing that "similarly situated individuals outside [the] protected class were treated more favorably"). Nor do those incidents constitute adverse employment actions that give rise to an inference of discrimination based on age. There is no indication that the number of staff which Plaintiff supervised and the fact that Gebala was assigned certain responsibilities materially affected Plaintiff's terms and conditions of employment in a negative way. *Dilbert v. Potter*, No. C 05-00087 MEJ, 2009 WL 1517734 (N.D. Cal. June 1, 2009), *aff'd*, 402 F. App'x 234 (9th Cir. 2010) (holding that there was no evidence of adverse employment action based on age where the plaintiff "did not suffer a loss of hours or pay, or any other negative change to the terms and conditions").

To the extent that Plaintiff claims that she suffered age discrimination when VMC hired Lisa Stroud as the Director of Care Management, such a claim fails as well. Plaintiff has not submitted evidence showing that Stroud was less than 40 years old (and thus outside the "protected class") at that time or that the hiring was due to Stroud's younger age. *See Whitman*, 541 F.3d at 932. In fact, according Defendants, Stroud is older than Plaintiff. Mot. 20–21.

As such, the Court finds that Plaintiff has not produced evidence to show a genuine issue of material fact as to whether Plaintiff suffered adverse employment actions due to her age. Defendants' motion for summary judgment on Plaintiff's age discrimination claims is GRANTED.

### C. Hostile Work Environment and Harassment Claims

Plaintiff brings hostile work environment and harassment claims based on Title VII and FEHA. Orig. Compl. ¶¶ 114–28. To prevail on her claims, Plaintiff must show that (1) "[she] was subjected to verbal or physical conduct of a harassing nature [due to her protected status], (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the [her] employment and create an abusive working environment." *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1109–10 (9th Cir. 2000) (citation omitted); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (applying the same standards for Title VII and FEHA claims). Whether a working environment is "abusive" is evaluated by looking at the totality of the circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 999 (9th Cir. 2010); *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 704 (N.D. Cal. 2014). The conduct at issue "must be extreme to amount to a change in the terms and conditions of employment." *Kortan*, 217 F.3d at 1110 (citation omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted).

Plaintiff relies on numerous incidents of alleged harassment conducted by Defendants, including: sending too many emails to Plaintiff; leaving her out of meetings; reprimanding

Plaintiff; soliciting complaints about her; setting unnecessary and constant meetings with Fogle; telling Plaintiff to "write up" a staff; and instructing Plaintiff to call her staff who was on leave to return early to work. *See* Interrogatory Reps. 16–18.

Defendants argue that Plaintiff's claims fail because her claims are not exhausted as they were not described in her administrative charges. Mot. 20. Defendants also contend that the purported incidents concerning Kelton are untimely given that those incidents occurred more than one year before the DFEH charge was filed. *See id.* The Court is unpersuaded by Defendants' argument that Plaintiff failed to exhaust her hostile work environment and harassment claims and that allegations regarding Kelton is time barred. Unlike discrimination and retaliation claims, hostile work environment claims are "different in kind" and are based on conduct that occurs over the course of time. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). As such, courts may consider incidents that "fall outside the statutory time period" when evaluating those claims. *Id.* at 117; *see also Kraja v. Bellagio, LLC*, 202 F. Supp. 3d 1163, 1170 (D. Nev. 2016). As such, Defendants have not shown why Plaintiff is barred from relying on the numerous incidents identified in her interrogatories responses to support her hostile work environment and harassment claims. Nor have Defendants established that they are entitled to a laches defense (Mot. 20) at this time.

Defendants also assert that none of the alleged incidents constitute harassment. Mot. 20. Defendants further contend that there is no evidence that any of the allegedly harassing incidents occurred due to Plaintiff's race, age, or gender. *Id.* According to Defendants, Plaintiff complains of acts by men but also feels aggrieved by women and attributes harassment to Kelton, Stroud, and Johnson, who are women older than Plaintiff. *Id.* at 20–21. In Defendants' view, there is no evidence of conduct that was directed to any racial group as opposed to Plaintiff individually. *Id.* at 21. Plaintiff counters that Defendants selectively choose facts and attempt to minimize the effect of the incidents while ignoring others. Opp'n 24. Plaintiff argues that Defendants also "leave out . . . [the] medical diagnosis regarding [Plaintiff's] mental health, the constant bombardment by Defendants, overloading, . . ., and attempts to get rid of [her]." *Id.*

As mentioned above and as the parties agree (Mot 19; Opp'n 23), Plaintiff must show that

"the conduct was sufficiently severe or pervasive to alter the conditions of the [her] employment and create an abusive working environment" to prevail on her claims. *Kortan*, 217 F.3d at 1109–10. Here, even when viewing the evidence in the light most favorable to Plaintiff, the alleged behaviors identified by Plaintiff are not sufficiently severe and pervasive to support a showing that the work environment was abusive.

For example, allegations that Defendants sent too many emails to Plaintiff and left her out of meetings are not extreme so as to change "the terms and conditions of employment." *Kortan*, 217 F.3d at 1110. While Plaintiff alleges that Defendants reprimanded her, the evidence shows that Defendants gave constructive criticism or at most were rude and provided unnecessary instructions. *See, e.g.*, Ex. J to Bussey (performance evaluation); Interrogatory Resps. 17 (asserting that Kelton reprimanded Plaintiff for "walking a medical chart [sic]" to the compliance office); *id* at 16 (Johnson instructing Plaintiff to stay away from certain employees). The purported comments are less offensive than other conduct which the Ninth Circuit held to be neither severe no pervasive enough to give rise to a hostile work environment. *Vasquez*, 349 F.3d at 643 (holding that there was no hostile environment discrimination where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others).

Plaintiff also identifies a non-party employee's statement that "I don't keep track of that *thing*. I don't know where [Plaintiff] is" and Johnson's statement that "PURCs will continue working for [Plaintiff] for now." Interrogatory Resps. 16–17. However, even if those statements were derogatory and she felt offended, they do not rise to the level of harassment. *Washington v. Lowe's HIW Inc.*, 75 F. Supp. 3d 1240, 1251, 1251 n.8 (N.D. Cal. 2014) (holding that a statement that "[Plaintiff] should not exist" and accusations of insubordination did not go beyond "simple workplace annoyances").

Moreover, there is no evidence that the incidents which Plaintiff relies on were related to her race, age, or gender. As such, the Court finds that Plaintiff cannot show that she was "subjected to verbal or physical conduct" of a harassing nature due to her membership in a protected class. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003); *Surrell v.*

*California Water Serv. Co.*, 518 F.3d 1097, 1109 (9th Cir. 2008) (holding that the plaintiff's hostile work environment claim failed because she presented no evidence that performance related comments were based on race). The Court notes that the only sexually inappropriate comment concerns an incident where Stroud allegedly talked about her hair and commented that another case manager asked if "they also did a Brazilian on her crouch [sic]." Ex. G to Bussey Decl. 16 (Interrogatory Resps. No. 13); *see also* Williams Dep. 352:14–353:20. While that comment was offensive, it was not directed towards Plaintiff and that single event cannot support her claim. *See Kortan*, 217 F.3d at 1110–11 (mere utterances that were just offensive did not affect conditions of employment to a sufficiently significant degree so as to create liability) (citation omitted). Only conduct that is extreme so as to change the terms and conditions of employment is actionable. *See E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 999 (9th Cir. 2010). There is no evidence that the sexually inappropriate comment altered the conditions of Plaintiff's employment. In fact, Plaintiff testifies that she does not believe that there were "any other sexual comments made to [her]." Williams Dep. 353:18–20.

Accordingly, the Court finds that Defendants' purported conduct—while showing at times criticism, inappropriate comments, or unnecessary instructions—neither was directed towards Plaintiff's race, age, or gender nor did they "pollute the workplace [and] alter[] the conditions of her employment." *Manatt*, 339 F.3d at 798. Defendants' motion for summary judgment with respect to Plaintiff's hostile work environment and harassment claims is GRANTED.

### D. Constructive Termination Claim

Defendants argue that Plaintiff's constructive termination claim fails because it is not alleged in the complaint. Mot. 21–22. The Court agrees. Plaintiff asserts constructive discharge against Defendants only in her interrogatory responses but not in the complaint. *See* Interrogatory Resps. Nos. 12 and 19; Orig. Compl. Plaintiff cannot pursue a claim not pled in her complaint. *Hasan v. E. Washington State Univ.*, 485 F. App'x 169, 171 (9th Cir. 2012).

The Court notes that Plaintiff's supplemental complaint mentions "constructive discharge" in the jurisdiction section. Suppl. Compl. 2. However, the supplemental complaint asserts claims against only Lisa Stroud and does not include a constructive discharge claim.

Even if Plaintiff's complaint was construed to plead a constructive termination claim, Plaintiff cannot assert that claim because she did not exhaust it. Plaintiff's DFEH and EEOC charges did not allege or reference constructive termination. *See* DFEH Charge, EEOC Charge. As such, an original administrative investigation would not have encompassed the constructive termination claim. *Green*, 883 F.2d at 1472 (holding that the scope of the civil action is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the original charge).

Accordingly, the Court GRANTS Defendants' motion for summary judgment with respect to the constructive termination claim.

### E. California Family Rights Act Claim

The California Family Rights Act Claim ("CFRA") adopts the language of the Family and Medical Leave Act ("FMLA"), and courts have applied the same standards for those statutes. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242–43 (9th Cir. 2014); *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 n.4, 1138 (9th Cir. 2003).

Here, Plaintiff alleges that Defendant County of Santa Clara violated the CFRA by refusing to grant her family care leave. Orig. Compl. ¶ 33. To assert a CFRA interference claim, an employee must establish that "(1) he was eligible for the [CFRA's] protections, (2) his employer was covered by the [CFRA], (3) he was entitled to leave under the [CFRA], (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him [CFRA] benefits to which he was entitled." *Duran v. Stock Bldg. Supply W., LLC*, No. CV1400511, 2015 WL 13307031, at *10 (C.D. Cal. Mar. 9, 2015), aff'd, 672 F. App'x 777 (9th Cir. 2017) (citing *Escriba*, 743 F.3d at 1243) (alteration in original).

There is no evidence showing that Plaintiff was denied her request for family care and medical leave to care for her mother in July 2014. In fact, Plaintiff testifies that she did receive FMLA leave for the period between July 9, 2014 and August 4, 2014. Williams Dep. 127:23–128:7. Moreover, although Plaintiff contends that Johnson and Fogle initially denied FMLA leave (*see* Opp'n 10–11, 22), the evidence shows that Johnson and Fogle communicated with Plaintiff so that she could timely submit her FMLA paperwork. Ex. 35 to Williams Decl. (email

communications). Accordingly, the Court finds that there is no material dispute of fact that Plaintiff was approved and received her FMLA leave in the summer of 2014 and thus Plaintiff's CFRA claim fails. Defendants' motion for summary judgment with respect to CFRA claim is GRANTED.

### F. Retaliation Claim

Plaintiff also brings retaliation claims against Defendants. Orig. Compl. ¶¶ 129–44. The same burden-shifting framework that applies to Plaintiff's discrimination claims also applies to her claims for retaliation. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013); *Panka v. Tin, Inc.*, No. CV 11-1481, 2012 WL 273892 (C.D. Cal. 2012) (applying the *McDonnell Douglas* burden shifting analysis to retaliation claims under FEHA).

A retaliation claim under Title VII, ADEA, and FEHA requires three elements: "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 923, 928 (9th Cir. 2000); *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001). Under Title VII and ADEA, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse [in that] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007). Under the FEHA, an adverse action is conduct that "materially affect[s] the terms and conditions of employment." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1036 (Cal. 2005). Logic demands the allegedly retaliatory act cannot precede the protected activity. *Pratt v. Delta Air Lines, Inc.*, No. 2:14-CV-00815, 2015 WL 2153397, at \*16 (C.D. Cal. May 4, 2015); *Cramblett v. McHugh*, No. 3:10-CV-54-PK, 2012 WL 7681280, at \*42 (D. Or. Nov. 19, 2012), *report and recommendation adopted*, No. 3:10-CV-00054-PK, 2013 WL 943525 (D. Or. Mar. 8, 2013).

Here, Defendants point out that Plaintiff complained about discrimination to Lorenz in September 2014. *See* Mot. 22; Williams Decl. ¶ 24. She then filed a DFEH charge and EEOC charge in October 2014 and December 2014, respectively. DFEH Charge; EEOC Charge.

Plaintiff filed this action in August 2015. Complaining to Lorenz about discrimination and filing the DFEH and EEOC charges were protected activity.

Defendants argue that Plaintiff identifies 29 retaliatory acts in her interrogatory responses but that most of them occurred before September 2014. Mot. 22–23. According to Defendants, only 11 events occurred after Plaintiff complained to Lorenz. *Id.* at 23. Among the 11 events, Defendants assert that the following six incidents cannot support a retaliation claim for the same reasons that Plaintiff's discrimination claims fail: (i) requiring Plaintiff to provide a written justification for attending a career development conference, (ii) planning to remove rehab clerical support staff from Plaintiff's oversight, (iii) not requesting Plaintiff to submit information to be published in the hospital newsletter, (iv) putting Gebala "in charge" while Stroud was absent, (v) assigning some of Plaintiff's responsibilities to a supervising HSR, Matt Santos, and (v) instructing Plaintiff to prioritize drafting policies over filling vacant positions. Mot. 23. The Court agrees. Those allegations are not adverse employment actions as they failed to "materially affect" the terms and conditions of Plaintiff's employment. *Yanowitz*, 36 Cal. 4th at 1036. Nor are those incidents serious enough to "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68. As such, Plaintiff cannot show a prima facie case of retaliation based on those allegations.

Defendants further challenge the remaining five incidents: (i) reprimanding Plaintiff for communicating with the Rehab Administrator about funding a clerical support position (July 2015, Williams Dep. 402:12–2); (ii) omitting Plaintiff's name from Stroud's out-of-office contact notification (August 2015, Ex. 25 to Williams Decl.); (iii) reprimanding Plaintiff for communicating with Lorenz to request approval for a job title change that was denied by Johnson (August 2015, Williams Dep. 368:11–373:11); (iv) reprimanding Plaintiff for not praising the supervising HSR, Matt Santos (September 2015, *id.* at 389:5–17); and (v) conducting a "coaching" meeting with Plaintiff (October 2015, *id.* at 388:10–393:14). Mot. 23. Those incidents all occurred in the latter half of 2015. Defendants assert that those incidents "[do not] appear in Plaintiff's administrative charges, all involve individuals (Lisa Stroud, Matt Santos, Pat Brady, Benita McLarin) who are non-respondents thereto, and each occurred long after the charges were

1    filed." *Id.* On this basis, Defendants contend that Plaintiff's retaliation claims based on those

2    incidents are not exhausted. *Id.* Defendants further argue that those incidents are not serious

3    enough to support a retaliation claim and that, in fact, Plaintiff admits that the "reprimands"

4    occurred due to her non-protected activities such as allegedly not following the chain of command

5    or refusing to congratulate the supervising HSR. *Id.* at 23–24. Plaintiff counters that her claims

6    are reasonably related to her administrative charges. *See* Opp'n 25.

7         The Court agrees with Defendants' arguments that Plaintiff's retaliation claims based on

8    those five incident fail. First, those claims are not exhausted. The DFEH and EEOC charges

9    allege that discrimination intensified after Plaintiff complained and expressed concerns about her

10   discriminatory treatment. *See* DFEH Charge 565. But those charges were filed in October and

11   December of 2014, soon after Plaintiff complained to Lorenz about discrimination in September

12   2014. As such, an administrative investigation would have covered purported retaliatory acts that

13   occurred around the time the charges were filed in late 2014. However, the investigation would

14   not have encompassed alleged acts that occurred more than seven months later (i.e., in the latter

15   half of 2015), let alone acts that were primarily done by Stroud who was not named in the charges

16   and yet to be employed in 2014. *See Vasquez*, 349 F.3d at 639, 645 (holding that a retaliation

17   claim was unexhausted where the retaliatory act occurred four months after the harassment and

18   one month after the EEOC issued its right-to-sue letter). In other words, "EEOC [or DFEH] could

19   not have investigated [the incidents that] had not yet happened at the time [it] was conducting its

20   investigation." *Id.*

21        Second, there is no evidence that those incidents "materially affect[ed]" the terms and

22   conditions of Plaintiff's employment, and thus they do not constitute adverse employment actions.

23   *Yanowitz*, 36 Cal. 4th at 1036. For the same reason, those incidents would not have "dissuaded a

24   reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S.

25   at 68. Accordingly, the Court finds that the five incidents are not sufficiently adverse events to

26   give rise to a retaliation claim.

27        Plaintiff argues that Defendants sought a medical diagnosis of Plaintiff and "force[d] [her]

28   to resign." Opp'n 25. To the extent that Plaintiff intends to assert a retaliation claim based on

events concerning her administrative leave which began in January 2016 and resignation in October 2016, that claim is unexhausted for the same reasons discussed earlier. An administrative investigation based on charges filed in late 2014 would not encompassed acts that occurred on or after January 2016. *See Vasquez*, 349 F.3d at 645.

The Court also notes that Plaintiff's supplemental complaint asserts a retaliation claim against Lisa Stroud and alleges retaliation after filing this action. Suppl. Compl. 6. Stroud, however, has not been served with the supplemental complaint. Moreover, a retaliation claim based on the filing of this lawsuit in August 2015 is neither contained in nor related to the DFEH and EEOC charges filed in 2014.

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment with respect to the retaliation claims.

### G. Failure to Prevent, Investigate, and Remedy Discrimination Claims

Plaintiff brings a claim based on failure to prevent, investigate and remedy discrimination under the FEHA. Orig. Compl. ¶¶ 98–113. This claim is derivative of the discrimination, harassment, and retaliation claims. To state such a claim, Plaintiff must show that "(1) she was subjected to discrimination, harassment, or retaliation because of a protected trait; (2) her employer failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and (3) this failure caused [her] to suffer injury, damage, loss, or harm." *Abdul-Haqq v. Kaiser Emergency in San Leandro*, No. 16-CV-05454-PJH, 2017 WL 550235, at *6 (N.D. Cal. Feb. 10, 2017) (citation omitted).

The Court first addresses whether Plaintiff can sustain a failure to prevent claim with respect to Plaintiff' application for the Director of Care Management Position. Defendants argue that the County of Santa Clara took reasonable steps by conducting an investigation after Plaintiff complained. *See* Mot. 24 (citing Ex. NN to Bussey Decl.). Plaintiff counters that Defendants failed to prevent "at least by coming to a halt after [Plaintiff wanted her] attorney's involvement,[13] denying [her] union representation, and completing their report without [her] input." Opp'n 25.

---

[13] The Court understands Plaintiff's argument to mean that the purported discrimination continued even after Plaintiff involved her attorney.

Plaintiff also contends that she was compared to a janitor. *Id.* According to Plaintiff, Lorenz "equated [her] situation to that of a janitor asking to be reassigned." Williams Decl. ¶ 24.

As mentioned, Plaintiff must show that the County failed to "take all reasonable steps necessary to prevent discrimination" in order to prevail on her claim. *Abdul-Haqq*, 2017 WL 550235, at *6. "One such reasonable step, and one that is required in order to ensure a discrimination-free work environment, is a prompt investigation of the discrimination claim." *California Fair Employment & Hous. Com. v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1024 (Ct. App. 2004) (citation omitted). Other reasonable steps may include establishing "antidiscrimination policies and . . . procedures to handle complaints and grievances regarding discrimination." *Id.* at 1025.

Here, Defendants point to evidence showing that the County had an Equal Opportunity Division to handle discrimination complaints and that Lorenz promptly reported Plaintiff's complaints to Equal Opportunity Officer Lisa Holmes. Ex. NN to Bussey Decl. 574;[14] *see also* Williams Dep. 304:14–305:5. Officer Holmes initiated an investigation, contacted Plaintiff to schedule an interview, conducted an interview with Johnson, and reviewed documents relevant to Plaintiff's allegations. Ex. NN to Bussey Decl. Plaintiff, however, failed to respond to Officer Holmes's request for an interview. *Id.* at 574, 578; Williams Dep. 305:1–18. Officer Holmes thus could not interview Plaintiff and concluded the investigation due to Plaintiff's failure to cooperate. Ex. NN to Bussey Decl. 578. Based on this evidence, the Court finds that Defendants have submitted substantial evidence to demonstrate that the County took reasonable steps by having a procedure to address discrimination grievances and promptly investigating Plaintiff's allegations, *Gemini*, 122 Cal. App. 4th at 1024, and that they have pointed to an absence of evidence that supports Plaintiff's claim. Defendants therefore have met their initial burden for summary judgment. *Clark v. AmTrust N. Am.*, No. 16-CV-05561-MEJ, 2018 WL 839148, at *6 (N.D. Cal. Feb. 13, 2018) ("On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of

---

[14] The cited page number for Ex. NN to the Bussey Declaration refers to the Bates number at the bottom of each page.

evidence to support the nonmoving party's case." (citation omitted)).

Because Defendants have satisfied their initial burden, Plaintiff must show that there is a genuine issue for trial that defeats the summary judgment motion. *Id.* Plaintiff asserts that (i) the County completed the investigation without her input, (ii) Defendants denied her union representation, and (iii) Lorenz compared her as a janitor. Opp'n 25. The evidence that supports those assertions, however, is insufficient to create a genuine issue of material fact as to whether Defendants failed to take reasonable steps to prevent racial discrimination. The evidence is clear that Officer Holmes' investigation concluded without Plaintiff's input because she failed to respond to Officer Holmes and not due to discriminatory reasons. Also, while Plaintiff alleges that she was denied union representation on several occasions, there is no dispute that her union representative was present when she submitted her grievance to Lorenz. Williams Dep. 304:17–20. Moreover, although Lorenz's statement equating Plaintiff's "situation to that of a janitor asking to be reassigned" may have offended her, that statement does not reflect that the County failed to investigate her allegations. In fact, Lorenz promptly contacted the Equal Opportunity Division to report Plaintiff's claims on September 4, 2014. Ex. NN to Bussey Decl. 574.

Nevertheless, the Court finds that there is a genuine issue of material fact that defeats Defendants' request for summary judgment. Plaintiff claims that she continued to suffer discrimination after she complained to Lorenz and her attorney became involved. She filed her grievance with Lorenz in early September 2014. About six weeks later, in mid-October 2014, Johnson conducted interviews for the permanent Director of Care Management position. *See* Ex. 18 to Williams Decl. As discussed earlier, the composition of the interview panel, which included only one African American out of twenty-two members (Williams Decl. ¶ 8), and Johnson's omission of Plaintiff's acute rehab case managers from her email soliciting interview panel members, support an inference of racial discrimination sufficient to survive summary judgment. Thus, a reasonable jury may infer that the County's grievance procedure and investigation was ineffective and thus the County failed to take reasonable steps to prevent discrimination. *Cf. Gemini*, 122 Cal. App. 4th at 1024 (holding that a defendant's claim that its procedures are reasonable and effective can be negated by proof of retaliation).

Based on the foregoing, when viewing the evidence in the light most favorable to Plaintiff, the Court concludes that there is a genuine issue of material fact as to whether Defendants took all reasonable steps to prevent racial discrimination when VMC hired Stroud. Defendants' motion for summary judgment on Plaintiff's failure to prevent discrimination claim based on racial discrimination concerning Plaintiff's application and failure to be promoted to the permanent Director of Care Management position is DENIED.

With respect to all other claims, the Court has determined that there is no evidence of discrimination, harassment, or retaliation as set forth above. Thus, Plaintiff's failure to prevent discrimination claims based on other allegations fail. *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1316–17 (Ct. App. 2015) (holding that there can be no claim for failure to prevent discrimination if actionable discrimination has not been found); *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (Ct. App. 1998) (a claim for failure to prevent requires "an essential foundational predicate of . . . discrimination"). Accordingly, the Court GRANTS summary judgment for Defendants on the remainder of Plaintiff's failure to prevent discrimination claims.

## VII. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Defendants' motion for summary judgment as to the racial discrimination claim based on Plaintiff's application and failure to be promoted to the permanent Director of Care Management position is DENIED.

(2) Defendants' motion for summary judgment as to the failure to prevent discrimination claim based on racial discrimination concerning Plaintiff's application and failure to be promoted to the permanent Director of Care Management position is DENIED.

(3) Defendants' motion for summary judgment as to all remaining claims is GRANTED.

**IT IS SO ORDERED.**

Dated: August 22, 2018

_____
BETH LABSON FREEMAN
United States District Judge